**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHANIE JONES,

                        Plaintiff,

    -against

FOX ROTHSCHILD LLP and IAN W.
SIMINOFF.
                     Defendants.

COMPLAINT

Civil Action No. 1:19-cv-11573

**JURY DEMANDED**

Plaintiff, Stephanie Jones ("Ms. Jones"), by and through her attorneys, T.A. Blackburn Law, PLLC,  and Law Offices of Robert T. Vance, Jr., hereby brings a series of claims against Defendants, Fox Rothschild LLP  ("Fox") and Ian W. Siminoff, ("Siminoff") (hereinafter collectively referred to as, "Defendants"), of which the following is a statement:

## NATURE OF ACTION

1.      This is an employment discrimination case that concerns the failure of Defendants to create, foster and promote a work environment in which their female employees are not subjected to discrimination, harassment and intimidation because of their gender, and in which management employees respect the right of female employees to be free from discrimination, harassment and intimidation because of their gender.

2.      At all times relevant to this action, Plaintiff Stephanie Jones was an employee of Defendants Fox and Siminoff.

3.      Defendants own, operate and/or control a national law firm with its principal place of business located at 2000 Market St, 20th Floor, Philadelphia, Pennsylvania, 19103 under the name "Fox Rothschild LLP".

4.      On information and belief, Siminoff, serves or served as a Senior Attorney and agent of Fox, and through Fox operates or operated the law firm as a national enterprise.

5.      Ms. Jones was employed by Defendants as a Legal Administrative Assistant. Defendants have offices located at 2000 Market St, 20th Floor, Philadelphia PA 19103; 49 Market St, Morristown NJ 07960; and 101 Park Avenue, 17th Floor, New York, NY 10178.

6.      At all times relevant to this action, in violation of federal and state laws and regulations, Defendants created, fostered, promoted and perpetuated policies and practices that resulted in the creation of a work environment ravaged with frequent pervasive unwanted sexual comments, advances, requests and other similar conduct.

7.      Ms. Jones brings this action pursuant to Title VII of the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) ("Title VII"),  the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq*. ("NYSHRL"), the New York City Human Rights Law, N. Y. Administrative Code § 8-101 *et seq*. ("NYCHRL"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12  ("NJLAD"), seeking all damages available at law and in equity under those statutes, including applicable liquidated damages, interest, attorneys' fees and costs.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 2000d-2, 2000e-5(f), this action being brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000d and 2000e et seq., to redress and enjoin the discriminatory practices of defendants.  This Court has jurisdiction to hear Ms. Jones's state law claims under

the NYSHRL, the NYCHRL and the NJLAD pursuant to the Court's exercise of supplemental jurisdiction under 28 U.S.C. §1367.

9.     Venue is proper in this District by reason of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ms. Jones's claims arose in this District.

10.     Ms. Jones timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), received a Notice of Right to Sue ("NRTS") from the EEOC, and has commenced this action within 90 days of receipt of the NRTS.

11.     At all times relevant hereto, Defendants were employers within the meaning of Title VII, the NYSHRL, the NYCHRL and the NJLAD and employed more than 500 persons. The acts set forth in this Complaint were authorized, ordered and/or done by defendants' officers, agents, employees and/or representatives while actively engaged in the management and operation of defendants' business.

## **PARTIES**

*Plaintiff*

12.     Ms. Jones is an adult individual residing in the State of California.  She was employed by Defendants from on or about May 7, 1990 until June 21, 2017, when she was terminated.

*Defendants*

13.     Fox is a domestic limited liability partnership organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 2000 Market St, 20th Floor, Philadelphia PA 19103.

14.     Fox also maintained offices at 101 Park Avenue, 17th Floor, New York NY 10178 (hereinafter "the NY office") and 49 Market St, Morristown NJ, 07960 (hereinafter "the NJ office").

15.     Siminoff is an individual engaging (or who has engaged) in business in this judicial district during the relevant time period.  Siminoff is sued individually in his capacity as a Senior Associate and agent of Fox.

16.     On information and belief, Siminoff controls significant functions of Fox. He determines the work assignments and conducts performance reviews of Fox employees, including Ms. Jones, establishes their schedules, and has the authority to impact the hiring and firing of employees.

## FACTUAL ALLEGATIONS

17.     On or about May 7, 1990, Ms. Jones joined Grotta, Glassman & Hoffman PA as a librarian in Roseland, New Jersey.

18.     On October 1, 2006, Grotta, Glassman & Hoffman merged into Fox.  After the merger, Ms. Jones transitioned into the role of paralegal.

19.     In January 2007, Ms. Jones began working as a multi-area paralegal in the Roseland office, focusing on litigation, labor & employment and family law, and working with attorneys Matthew Adams, Ernest Badway, Kenneth Rosenberg, Siminoff, Mark Tabakaman, Robert Epstein and others.

20.     In January 2008, Ms. Jones was assigned to work exclusively with Siminoff and the Labor & Employment department.

21.     Siminoff was difficult and demanding, and had issues with many staff members. At that time, Siminoff was working for Michael Barabander.  Ms. Jones filed multiple complaints about Siminoff's behavior with then Office Administrator, Jackie Pampinella.

22.     In July 2013, Ms. Jones transitioned into to the role of Legal Administrative Assistant to Michael Barabander.

23.     Kenneth Rosenberg, Robert Epstein, and Mark Tabakman, all partners with Fox Rothschild who had experience working with Michael Barabander, warned Ms. Jones not to take the job because Michael Barabander was "insane", "horrible" and the like.

24.     From 2013 though 2015, in addition to supporting Michael Barbander, Ms. Jones also assisted attorneys Patricia McManus, Yalda Haery, Courtney Roach and Justin Schwam.

25.     Theresa Borzelli, a Partner at Fox Rothschild, informed Ms. Jones that Siminoff had been removed from Michael Barabander's team because he was instrumental in losing Hackensack Hospital, a long-time client of Michael Barbander's, due to his conflict with the client.  The resulting resentment between the two men set the stage for Siminoff's predatory behavior towards Barabander's assistant, Ms. Jones.

### *Siminoff's Oral Sex Inquiry at McLoone's Boat House*

26.     In January 2014, Siminoff invited Ms. Jones to have drinks after work at McLoone's Boat House in West Orange, NJ to talk about Michael Barabander, and supposedly to help her navigate the new position.

27.     Ms. Jones accepted Siminoff's offer.  At the time, Siminoff was married, and Ms. Jones was in the midst of a divorce.  Ms. Jones believed Siminoff to be straightforward regarding this invitation given his experience with Barabander.  They discussed work and personalities at

work for the first 45 to 60 minutes.  While drinking a second glass of wine, Siminoff asked Ms.

Jones if she enjoyed oral sex.  Ms. Jones immediately ended the conversation and left.

### *Beginning in January 2014, Siminoff began sending Ms. Jones sexually explicit text messages*

28.     Soon after asking her about oral sex at McLoone's Boat House, Siminoff told Ms.

Jones he was unhappy in his marriage and began sending her sexually explicit text messages that

focused on several topics, including Ms. Jones's sex life, what she liked regarding sex, and what

her sexual fantasies were.  His sexually explicit text messages even extended to the color of her

underwear.

29.     Siminoff served as Ms. Jones's direct supervisor whenever his assistant, Marlene

Mascolo, was out of the office.  On those occasions, he would request that Ms. Jones come into

his office for a myriad of reasons.  She resisted whenever she could, but Siminoff would demand

that she print documents and bring them to him.

### *Siminoff fondled Ms. Jones's breasts*

30.     On one occasion, while in Siminoff's office, he closed the door and fondled Ms.

Jones's breasts.  Ms. Jones pushed him off, told him to stop and left his office.

31.     Siminoff's attacks on Ms. Jones extended beyond the breast fondling attack in his

office.  He would stop by Ms. Jones's desk and attempt to fondle her breasts and her body

through her clothes.

### *Siminoff grabbed Ms. Jones's vagina*

32.     On one occasion, when both were at the coffee machine, Siminoff put his hands

under Ms. Jones' dress and grabbed at her vagina.

33.     Ms. Jones never touched Siminoff.  Rather, she kept him at arm's length to the

extent she could.

34.     Ms. Jones is not a physical match for Siminoff, who formerly was a soldier in the Israeli army.  Siminoff is 6'5" tall and weighs over 230 pounds.  He works out consistently and brags about his physicality.  On the other hand, Ms. Jones is 5'3" tall and weighs 120 pounds.

### Ms. Jones complained to Office Manager Elli Albert about Siminoff's behavior

35.     In August of 2014, Ms. Jones approached Elli Albert, Office Administrator in the NJ office, and asked her to remove her from the rotation of Siminoff's desk.   Albert denied Ms.Jones's request.

36.     Ms. Jones protested, and informed Albert that Siminoff made her feel uncomfortable, and was inappropriate and rude.

37.     Albert was unrelenting in her denial of Ms. Jones's request and told Ms. Jones that if she was unhappy at Fox, she should look for another job.  Albert told her there were "plenty of other places to work."

### Siminoff attempted to rape Ms. Jones

38.     In January 2015, after 5:30 p.m., during the work week, Ms. Jones found herself nearly alone on the 4th floor of the NJ office with Siminoff.  During this encounter, Siminoff pushed Ms. Jones into a deserted bathroom and tried to have sexual intercourse with her.

39.     Ms. Jones fought off Siminoff's sexual assault.

### Siminoff's sexually harassing text messages to Ms. Jones

40.     From March 30, 2017 through July 12, 2017, Siminoff sent over 100 unsolicited sexually harassing text messages to Ms. Jones, some of which are set forth herein, some of which were sent by Siminoff when he was working out of the NY office defending or taking depositions and some of which included photographs of his penis:

a.      On March 30, 2017 at 6:34:16 PM, Ms. Jones received the following text message from Siminoff: "How's the boyfriend? We should fuck in MB[1]'s office".

b.      On March 30, 2017 at 7:32:24 PM, Ms. Jones received the following text message from Siminoff: "Ever told you look like Cindy Crawford?"

c.      On March 31, 2017 at 12:38:04 AM, Ms. Jones received the following text message from Siminoff: "What's it like to be told you look like Cindy Crawford, a supermodel?"

d.      On March 31, 2017 at 1:08:15 AM, Ms. Jones received the following text message from Siminoff: "It has to give you confidence, in terms of sex appeal".

e.      On March 31, 2017 at 1:15:06 AM, Ms. Jones received the following text message from Siminoff: "Understand. Don't mind me, I'm just laying here at 3 am thinking about kissing your breasts".

f.       On April 1, 2017 at 6:48:04 PM, Ms. Jones received the following text message from Siminoff: "What are you wearing?"

g.      On April 1,2017 at 7:47:10 PM, Ms. Jones received the following text message from Siminoff: "I'd like to pour that glass of wine on your naked body".

h.      On April 1, 2017 at 7:59:07 PM, Ms. Jones received the following text message from Siminoff: "Even better than drinking it".

i.       On April 1, 2017 at 8:16:39 PM, Ms. Jones received the following text message from Siminoff: "As I see it, it trickles down your breasts, in between them, to in between your legs".

j.       On April 4, 2017 at 10:55:13 PM, Ms. Jones received the following text message from Siminoff: "Speaking of well behaved, what color panties and bra were you wearing today?"

---

[1] "MB" stands for Michael Barabander
.

k.      On April 5, 2017 at 2:40:44 PM, Ms. Jones received the following text message from Siminoff: "I said a prayer this morning that the warm weather will bring on your "bad" behavior."

l.      On April 7, 2017 at 4:27:26 PM, Ms. Jones received the following text message from Siminoff: "I had a nice birds eye view of your breasts today while talking to you."

m.      On April 10, 2017 at 10:40:28 AM, Ms. Jones received the following text message from Siminoff: "You look hot."

n.      On April 10, 2017 at 11:21:23 AM, Ms. Jones received the following text message from Siminoff: "Great dreams about you last night".

o.      On April 29, 2017 at 4:34:38 PM, Ms. Jones received the following text message from Siminoff: "We could have had some dep break fun if you were there."

p.      On May 2, 2017 at 6:20:42 AM, Ms. Jones received the following text message from Siminoff: "Dreams about you last night. I always cum when I think of you!"

q.      On May 2, 2017 at 6:27:24 AM, Ms. Jones received the following text message from Siminoff: "I'll share with you later what they were ...."

r.      On May 2, 2017 at 11:57:17 AM, Ms. Jones received the following text message from Siminoff: "Love your shirt."

s.      On May 2, 2017 at 12:07:59 PM, Ms. Jones received the following text message from Siminoff: "Because it accentuates your breasts".

t.      On May 2, 2017 at 8:29:59 PM, Ms. Jones received the following text message from Siminoff: "What are you wearing?"

u.      On May 3, 2017 at 7:47:32 PM, Ms. Jones received the following text message from Siminoff: "I'd lie if I said I wasn't curious as to what you are wearing".

v.      On May 3, 2017 at 8:09:53 PM, Ms. Jones received the following text message from Siminoff: "Will I have to wonder?"

w.      On May 4, 2017 at 7:55:09 PM, Ms. Jones received the following text message from Siminoff: "Do your friends know you have a younger attorney in the office infatuated by you?"

x.      On May 5, 2017 at 12:44:30 PM, Ms. Jones received the following text message from Siminoff: "Filthy. I'd love to get filthy with you Steph".

y.      On May 5, 2017 at 1:03:50 PM, Ms. Jones received the following text message from Siminoff: "Great boobs. Is that a one piece?"

z.      On May 8, 2017 at 4:58:46 PM, Ms. Jones received the following text message from Siminoff: "These NY women have nothing on you". … at 5:08:12 PM "But you already know that ..."

aa.     On May 8, 2017 at 5:36:26 PM, Ms. Jones received the following text message from Siminoff: "My hotel's got a rooftop bar".

bb.     On May 8, 2017 at 5:37:23 PM, Ms. Jones received the following text message from Siminoff: "We'll see if I show up for tomorrow's dep".

cc.     On May 9, 2017 at 3:59:34 PM, Ms. Jones received the following text message from Siminoff: "Just talked to my friend from louisville ky. He reminds me that as weird as i am he's weirder. And he's a surgeon".

dd.     On May 17, 2017 at 7:46:58 PM, Ms. Jones received the following text message from Siminoff: "I'm doing what I usually do when I think of you".

ee.     On May 17, 2017 at 8:15:28 PM, Ms. Jones received the following text message from Siminoff: "Do you mean thinking of me while you play with your pussy?"

ff.     On May 18, 2017 at 5:45:09 AM, Ms. Jones received the following text message from Siminoff: "One of the sexiest things about you is your confidence and your knowledge that you're good looking".

gg.     On May 20, 2017 at 7:35:05 AM, Ms. Jones received the following text message from Siminoff: "I had dreams of baby blue last night".

hh.     On May 20, 2017 at 7:39:56 AM, Ms. Jones received the following text message from Siminoff: "As in your powder blue one piece dress".

ii.     On May 20, 2017 at 7:55:49 AM, Ms. Jones received the following text message from Siminoff: "Oh yeah. My mind (as is yours) is a very powerful tool. You enjoyed yourself in my dream".

jj.     On May 20, 2017 at 8:18:17 AM, Ms. Jones received the following text message from Siminoff: "Let me know if you want to know how I did you in my dream, too".

kk.     On May 20, 2017 at 12:06:45 PM, Ms. Jones received the following text message from Siminoff: "There are, as you might imagine, some intriguing details".

ll.     On May 23, 2017 at 7:10:23 PM, Ms. Jones received the following text message from Siminoff: "Mmmm. Of course who knows where kissing would lead ..."

mm.     On May 23, 2017 at 7:19:27 PM, Ms. Jones received the following text message from Siminoff: "I suppose there is the possibility, mind you, just a possibility, that kissing could lead to me doing you from behind?"

nn.     On May 23, 2017 at 7:53:12 PM, Ms. Jones received the following text message from Siminoff: "Can I share with you the assist you gave me over the weekend? Share something else?"

oo.     On May 23, 2017 at 8:07:53 PM, Ms. Jones received the following text message from Siminoff: "The assist was three-fold"

pp.     On May 23, 2017 at 8:10:16 PM, Ms. Jones received the following text message from Siminoff: "Three different images, one after the other: 1) you spitting my cum into my ex'es hair; 2) you inserting veggies into her ass; and 3) you fucking Andy while I was sleeping".

qq.     On May 23, 2017 at 8:12:14 PM, Ms. Jones received the following text message from Siminoff: "Yes. Your favorite of the 3?"

rr.     On May 25, 2017 at 6:31:34 PM, Ms. Jones received the following text message from Siminoff: "There's not much better in this world than you in a top with a plunging neckline".

ss.     On May 25, 2017 at 6:57:26 PM, Ms. Jones received the following text message from Siminoff: "The men who have had the good fortune of being your romantic and or sexual partner must feel so blessed".

tt.     On May 25, 2017 at 8:40:53 PM, Ms. Jones received the following text message from Siminoff: "Did you catch me looking at your breasts last night/today?"

uu.     On May 25, 2017 at 9:10:50 PM, Ms. Jones received the following text message from Siminoff: "But please share, who is the object of your sex fantasies? 33?"

vv.     On May 30, 2017 at 12:11:11 PM, Ms. Jones received the following text message from Siminoff: "In deps .... hi". … at 2:43:47 PM, Ms. Jones received the following text message from Siminoff: "Ooh la la. Panties?"

ww.     On May 30, 2017 at 8:58:15 PM, Ms. Jones received the following text message from Siminoff: "And even took a new pic this evening".  The text message included a photograph of Siminoff's penis.

xx.     On June 1, 2017 at 9:50:56 PM, Ms. Jones received the following text message from Siminoff: "I know you're a visual person .. do you want a visual?"

yy.     On June 1, 2017 at 9:52:44 PM, Ms. Jones received the following text message from Siminoff: "Sure. If you remember, can you imagine what it would be like for me now to put myself inside you?"

zz.      On June 13, 2017 at 8:17:27 AM, Ms. Jones received the following text message from Siminoff: "I've been a very good boy, so I should be abyss-free! But I'd love to send you another pic of my cock".

aaa.      On June 13, 2017 at 2:35:27 PM, Ms. Jones received the following text message from Siminoff: "Might I ask how old your most fortunate gentleman suitor is?"

41.      Periodically Ms. Jones blocked Siminoff's text messages, which he referred to as being in the "abyss."  When she did so, Siminoff continually sent her harassing emails and texts requesting to be made "abyss-free," some of which are set forth herein:

a.      On April 17, 2017 at 12:04 PM, Ms. Jones received an email on her Fox Rothschild email account from Siminoff titled "Please accept this as a formal de-abyssment request. Thanks!"

b.      On April 18, 2017 at 5:00 PM, Ms. Jones received an email on her Fox Rothschild email account from Siminoff titled "Abyss-free spring". The body of the email had the following: "Re the next casual Friday, I will be wearing a t-shirt with the above phrase emblazoned".

c.      On April 19, 2017 at 1:37 PM, Ms. Jones received an email on her Fox Rothschild email account from Siminoff titled "Abyss removal update". The body of the email had the following: "Hi- just checking in".

d.      On April 19, 2017 at 2:00 PM, Ms. Jones received an email on her Fox Rothschild email account from Siminoff titled "Abyss removal update". The body of the email had the following: "I can't hear from you? What did you say?".

e.      On April 19, 2017 at 2:02 PM, Ms. Jones received an email on her Fox Rothschild email account from Siminoff titled "Abyss removal update". The body of the email had the following: "Did you hear that? DO YOU HAVE AN ABYSS REMOVAL UPDATE?".

f.      On April 24, 2017 at 10:49:00 AM, Ms. Jones received the following text message from Siminoff: "Ah, to be out of the abyss .... so refreshing".

g.      On June 13, 2017 at 9:27 AM, Ms. Jones received an email from Siminoff titled "Good morning". The body of the email says the following: "Hope all is well, and cheers to an abyss-free June!!".

h.      On June 13, 2017 at 8:17:27 AM, Ms. Jones received the following text message from Siminoff: "Abyss-free?".

### *Jones was also sexually harassed by Michael Barabander, a Partner at Fox*

42.     On February 3, 2016 at 5:48 PM, Ms. Jones sent officer manager Elli Albert an email titled "Today".  Ms. Jones addressed several incidents of abusive, humiliating, harassing behavior exhibited by Michael Barabader.  Ms. Jones raised an issue with Michael Barabander consistently singing "Me and Mrs. Jones," a sexually suggestive song about an illicit affair.

43.     On February 4, 2016 at 8:54 AM, Albert acknowledged receipt of Ms. Jones's email, and offered to speak with Michael Barabander about his actions.

44.     On February 4, 2016 at 10:32 AM, Ms. Jones raised concerns of retaliation from Michael Barabander.

45.     As a representative of Fox, Albert did not comply with the policies and procedures contained in Fox's "Administrative Staff Handbook" dated March 2015. For example, Albert did not complete an investigation of Ms. Jones's harassment complaint, she did

not communicate a summary of her findings and intended actions to Ms. Jones and she did not maintain a written summary of whatever investigation she did conduct in a confidential file.

46.     Siminoff controls significant functions of the NJ office.

47.     Fox and Siminoff possessed and exercised substantial control over Ms. Jones's working conditions and the policies and practices that governed her employment and compensation.

48.     Fox and Siminoff are Ms. Jones's joint employers within the meaning of Title VII, the NYSHRL, the NYCHRL and the NJLAD.

49.     Fox has a pattern and practice of violating the rights of its female employees and protecting their male harassers.  On information and belief, Fox previously was cited for similar violations of federal and state employment laws for protecting N. Ari Weisbrot, a former Partner at Fox, who was accused by several female attorneys of sexual harassment and sex discrimination and was forced to resign in 2017 after an internal investigation into the allegations.

## Count I
### Title VII of the Civil Rights Act of 1964, as Amended

50.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-49, inclusive, of this Complaint.

51.     Defendants discriminated against Ms. Jones in connection with the terms, conditions and privileges of her employment because of her gender and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

52.     Defendants' conduct was intentional, willful, deliberate and in callous disregard of Ms. Jones's rights.

53.     By reason of defendants' discrimination and retaliation, Ms. Jones is entitled to all legal and equitable remedies available under Title VII.

## Count II

### *The New York State Human Rights Law*

54.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-53, inclusive, of this Complaint.

55.     Defendants discriminated against Ms. Jones in connection to the terms, conditions and privileges of her employment because of her gender and retaliated against her in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-301.

56.     Defendants' conduct was intentional, willful, deliberate and in callous disregard of Ms. Jones's rights.

57.     By reason of defendants' discrimination and retaliation, Ms. Jones is entitled to all legal and equitable remedies available under the NYSHRL.

## Count III

### *The New York City Human Rights Law*

58.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-57, inclusive, of this Complaint.

59.     Defendants discriminated against Ms. Jones in connection with the terms and conditions of her employment because of her gender and retaliated against her in violation of the New York City Human Rights Law (the "NYCHRL"), N.Y. City Admin. Code §§ 8-101 – 8-131.

60.     Defendants' conduct was intentional, willful, deliberate and in callous disregard of Ms. Jones's rights.

61.     By reason of defendants' discrimination and retaliation, Ms. Jones is entitled to all legal and equitable remedies available under the NYCAC.

## Count IV

### *The New Jersey Law Against Discrimination*
### *(against defendant Fox Rothschild LLP)*

62.    Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-61, inclusive, of this Complaint.

63.    Fox discriminated against Ms. Jones in connection to the terms, conditions and privileges of her employment because of her gender and retaliated against her in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. § 10:5-1 et seq.

64.    Fox's conduct was intentional, willful, deliberate and in callous disregard of Ms. Jones's rights.

65.    By reason of Fox's discrimination and retaliation, Ms. Jones is entitled to all available legal and equitable remedies under the NJLAD.

## Count V

### *The New Jersey Law Against Discrimination*
### *(against defendant Ian W. Siminoff)*

66.    Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-65, inclusive, of this Complaint.

67.    Siminoff aided and abetted Fox's discriminatory, harassing and retaliatory conduct against Ms. Jones.

68.    Siminoff aided and abetted his own discriminatory, harassing and retaliatory conduct against Ms. Jones.

69.    Siminoff is liable to Ms. Jones for aiding and abetting Fox's and his own discriminatory, harassing and retaliatory conduct against Ms. Jones.

70.    Siminoff's conduct was intentional, willful, deliberate and in callous disregard of Ms. Jones's rights.

17

71.     By reason of Siminoff's discrimination and retaliation, Ms. Jones is entitled to all available legal and equitable remedies under the NJLAD.

### Count V

*Civil Assault and Battery*
*(against defendant Siminoff)*

72.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-71, inclusive, of this Complaint.

73.     Siminoff intentionally touched Ms. Jones in a harmful and offensive manner without her consent.

74.     Siminoff intentionally attempted and/or threatened to inflict physical and/or emotional injury on Ms. Jones with the ability to cause such harm, and which created a reasonable apprehension of bodily harm and/or offensive contact in Ms. Jones.

75.     As a direct an proximate result of Siminoff's actions, Ms. Jones incurred the injuries and damages described above.

76.     Siminoff's conduct constitutes civil assault and battery against Ms. Jones.

### Count VI

*Negligent Infliction of Emotional Distress*

77.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-76, inclusive, of this Complaint.

78.     As her employer, defendants had a fiduciary duty towards Ms. Jones to ensure that her work environment did not subject female employees to discrimination, harassment or retaliation, all of which hold the potential of causing deep emotional harm in the event of a breach.

79.     Defendants had a duty to care for Ms. Jones's well-being.

80.     As alleged above, defendants negligently breached the duty they owed to Ms. Jones.

81.     As a direct and proximate result of defendants' breach, Ms. Jones suffered the emotional distress and trauma alleged above.

82.     It was reasonably foreseeable that defendants' actions and omissions described above would cause genuine and substantial emotional distress and mental harm to the average female employee, including Ms. Jones.

83.     Defendants actions and omissions warrant an award of punitive damages.

## Count VII
### *Intentional Infliction of Emotional Distress*

84.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-83, inclusive, of this Complaint.

85.     Defendants' conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and appropriately can be regarded as atrocious and utterly intolerable in a civilized society.

86.     As a direct and proximate result of defendants' intentional infliction of emotional distress, Ms. Jones suffered the injuries and damages described above.

87.     Defendants' actions and omissions warrant an award of punitive damages.

## Count VIII
### *Negligent Supervision and Retention*
### *(against defendant Fox Rothschild LLP)*

88.     Plaintiff incorporates herein by reference as if set forth in full the averments of paragraphs 1-87, inclusive, of this Complaint.

89.     Fox was under a duty to exercise reasonable care in the supervision and training of its employees, including Siminoff, with respect to the risk of harm posed to its employees, and particularly its female employees, which reasonably could result from a failure to ensure the creation and maintenance of a work environment free from discrimination, harassment and retaliation.

90.     Fox knew and had reason to know it had the ability to control Siminoff with respect to his relations with direct and indirect subordinates that could result in discrimination, harassment or retaliation, and knew or had reason to know of the necessity and opportunity for exercising such control.

91.     Fox, through it acts and omissions, breached the duty described above that it owed to Ms. Jones.

92.     As a direct and proximate result of Fox's breach of duty, Ms. Jones incurred the damages and injuries described above.

93.     Fox's conduct was malicious, wanton, willful, oppressive and exhibited a reckless indifference to Ms. Jones's rights.

## JURY DEMAND

Ms. Jones demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Stephanie Jones, respectfully prays that the Court:

a.     adjudge, decree and declare that defendants have engaged in illegal gender discrimination and retaliation, and that the actions and practices of defendants complained of herein are violative of her rights under Title VII, the NYSHRL, the NYCHRL, and the NJLAD;

b.     order defendant Fox to provide appropriate job relief to Ms. Jones;

      c.        enter judgment in favor of Ms. Jones and against defendants for all available remedies and damages under law and equity, including, but not limited to, back pay, front pay, past and future mental anguish and pain and suffering, in amounts to be determined at trial;

      d.        order defendants to pay the attorney's fees, costs, expenses and expert witness fees of Ms. Jones associated with this case;

      e.        grant such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable; and

      f.        retain jurisdiction until such time as the Court is satisfied that defendants have remedied the unlawful and illegal practices complained of herein and are determined to be in full compliance with the law.

Tyrone A. Blackburn
T.A. Blackburn Law, PLLC
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Tel: 347-342-7432
TBlackburn@TABlackburnlaw.com

and

Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia, PA 19110
215 557 9550 tel / 215 278 7992 fax
Rvance@vancelf.com

Attorneys for Stephanie Jones